[Civ. No. 262.  Fourth Appellate District.—August 12, 1930.]

J. A. HARRIS, Appellant, v. J. H. HOLLAND et al., Respondents.

S. P. Williams and Dorsey Whitelaw for Appellant.

Wright & McKee and C. M. Monroe for Respondents.

CARY, P. J.—Appeal by plaintiff from judgment for defendant in an action brought to enforce contribution.

The plaintiff and six defendants were the board of directors of the Farmers and Merchants Bank of Imperial, hereinafter referred to as Farmers Bank, which was engaged in the banking business in Imperial County. In 1921 the bank became in urgent need of cash and with that need in view the directors borrowed from two other banks a total of $100,000 giving their joint and several promissory notes therefor. This money was placed in a special account in the Farmers Bank. January 2, 1922, the Farmers Bank was closed by the state banking department. The bank examiner insisted that if the bank were to be reopened this special deposit should be turned in to the general assets

of the bank. This was done. At the same time plaintiff, as the representative of all of the parties herein, received from the Farmers Bank assets of the face value of approximately $100,000, but of doubtful real value. The plaintiff took these doubtful assets and endeavored to realize upon the same and apply this money on the notes given to the two other banks. Up to the time of the trial of this action he had succeeded to the extent of approximately $20,000. Plaintiff had also paid on these notes out of his own funds something like $48,000. Plaintiff brought this action to enforce contribution from his co-makers. The language used in the amended complaint is difficult to summarize but in substance it alleged that plaintiff and defendants jointly undertook to acquire from the Farmers and Merchants Bank certain of its assets for the purpose of converting same into money; that in pursuance thereof they borrowed certain sums from two other banks executing their joint notes therefor; that the plaintiff undertook to convert said assets into money and apply it in payment of said promissory notes; that plaintiff expended and disbursed money upon the said promissory notes in excess of his collections in an amount approximating $48,000; that no more can be collected on these assets; and that all defendants except Holland are insolvent. Plaintiff asked judgment against Holland for approximately $26,000.

The court found: That plaintiff and defendants constituted the board of directors of the Farmers and Merchants Bank and were likewise stockholders therein; that plaintiff owned thirty-four shares and defendant Holland owned five shares; and that it was not true that plaintiff and defendants entered into a joint undertaking as alleged in paragraph I of the complaint.

As this last finding is the basis of much of the argument advanced by respondent in support of the judgment we give both paragraph I of the amended complaint and the language of the finding itself in full. This finding is:

"That it is not true that on or about the 1st day of February, 1922, the plaintiff and defendants entered into a joint undertaking for the purpose of procuring certain promissory notes and securities from the Farmers and Merchants Bank of Imperial, California, all as set forth in paragraph I of the plaintiff's amended complaint."

Paragraph I of the amended complaint to which this finding relates is as follows:

"That on or about the 1st day of February, 1922, the plaintiff and defendants jointly undertook to acquire from the Farmers and Merchants Bank, a banking corporation doing a banking business at the city of Imperial, said county and state, certain promissory notes, securities and other obligations held by said Farmers and Merchants Bank for the purpose of collecting or selling or otherwise converting said securities and obligations into money and for the purpose of said joint undertaking or enterprise plaintiff and defendants together borrowed certain sums of money from the Citizens National Bank, a banking corporation doing a banking business at Los Angeles, state of California, and from the Southern Trust and Commerce Bank of San Diego, a banking corporation doing a banking business in said county of Imperial as well as in the county of San Diego, and state of California; that plaintiff and defendants .o evidence their obligations to repay said amount of money so borrowed as aforesaid executed their joint and several promissory notes to said Citizens National Bank and said Southern Trust and Commerce Bank of San Diego in various amounts respectively and aggregating the total sum of approximately $105,000.00."

The court further found that the only purpose in borrowing this money and turning it over to the bank was to save the bank from being closed; that plaintiff and the defendants had no interest in and received no benefit from the transaction except by reason of their interest in the bank as above stated; that all defendants except Holland were insolvent; that plaintiff and Holland have both paid on said notes amounts greatly in excess of their proportionate share of the obligations; that Holland, in proportion to the interest of himself and plaintiff, had paid more than plaintiff although plaintiff had actually paid a greater amount. As conclusions of law the court held that as between themselves plaintiff and Holland were obligated to pay said notes in proportion to their respective stock holdings; that Holland had paid more than his proportion and had paid more than plaintiff considering their respective interests; and that plaintiff was entitled to no relief as against Holland. Judgment went for defendant Holland and plaintiff appeals.

It will be noted that nowhere is it found that as between themselves it was the intention of the parties to be liable for the borrowed money in proportion to their respective stock holdings only. Rather did the trial court conclude that where the directors of a corporation borrow money on their joint and several notes, making no agreement between themselves as to their respective liabilities for the borrowed money, and turn over this money to the corporation, as between themselves their liability on the notes for the borrowed money is in the same proportion as their stock holdings.

The correctness of this conclusion is the main question presented by this appeal. It is contended on behalf of plaintiff that in the absence of an agreement to the contrary, the comakers of a promissory note are, as among themselves, liable in equal amounts; that the findings being silent as to any intent between the parties concerning their respective liabilities on these notes, this rule should have been applied here; that where a proper case is made out for contribution, those who have become insolvent should be eliminated from consideration and the burden divided equally between those who remain solvent; that since plaintiff and the defendant Holland are the only solvent parties, each should bear one-half of the obligation, and that since a total of some $51,000 has been paid on these obligations, of which plaintiff paid $48,000 and defendant Holland $3,000, plaintiff should be entitled to contribution from defendant Holland to the extent of some $20,000. Respondent admits that in a proper case for contribution those who have become insolvent should be eliminated from consideration and the total burden equalized among those who remain solvent, but otherwise his views are at sharp variance with those of appellant.

Respondent's reasoning, apparently followed by the trial court, is: That the court has expressly found that these parties did not enter into a joint undertaking for the purpose of executing their notes and taking over certain assets; that the paying of this $100,000 into the bank was in substance but the levying of an assessment upon the stock of plaintiff and the defendants; that since plaintiff held thirty-four shares and defendant Holland only five, the liability of each on these loans was, as between themselves, in

the same proportion; that contribution has as its object the doing of equity between the parties and that to hold defendant Holland liable for fifty per cent of the total amount of the notes would, in effect, make the enforcement of contribution as asked for by plaintiff work an injustice rather than otherwise.

We cannot agree with respondent in his interpretation of the finding which we have quoted above. The finding goes no further than to hold that plaintiff and defendant did not enter into a joint undertaking for the purpose of procuring certain assets of the Farmers Bank as alleged in paragraph I of the amended complaint. As so construed, it finds full support in the evidence as will be seen from the following: The borrowing of the money from the other banks occurred in 1921, and it was then placed on deposit in the Farmers Bank. January 2, 1922, the bank was closed by the bank examiner because its reserves were exhausted and it was unable to pay its clearings for the day. It remained closed almost two months. Before the bank examiner would allow the bank to be reopened he insisted that this deposit be turned over to the Farmers Bank as a part of its general assets. At the same time the bank examiner selected certain bank assets with a face value of approximately $100,000 (the same in amount as the deposit which he had insisted that the directors turn over to the bank). These assets, which were questionable, were withdrawn and in lieu thereof the $100,000 deposit substituted. It is quite apparent that as a condition precedent to the reopening of the bank the examiner was requiring the directors to take out of the bank $100,000 worth of questionable assets and replace them with $100,000 in cash. This appears from the testimony of the bank examiner. The examiner then allowed the bank to be reopened the latter part of February, 1922. The question of acquiring the doubtful notes, etc., from the Farmers Bank did not therefore arise until just before the bank was reopened—about the end of February, 1922, and many months after the execution of the joint notes by which the $100,000 was raised. The trial court was therefore but following the evidence when it found that paragraph I of the complaint was untrue since that paragraph alleged that the borrowing of the money was for the purpose of acquir-

ing these assets from the Farmers Bank, an allegation which obviously did not correspond to the facts, since the borrowing had taken place long before the acquiring of these doubtful accounts was ever even considered. This construction of the findings finds further justification when we examine the paragraphs of the findings which follow the one quoted above. Here we find that after negativing the fact that the transaction was alleged in paragraph I of the amended complaint the court proceeds to find what actually happened as follows: That plaintiff and the defendants constituted the board of directors of the Farmers Bank; that they were stockholders therein, plaintiff holding thirty-four shares and defendant Holland five shares; that prior to 1922 $100,000 was borrowed from other banks on the joint promissory notes of plaintiff and defendants and placed on deposit in the Farmers Bank; that the bank in 1922 had been closed by order of the banking department; that as a condition precedent to the bank being opened the banking department required that the $100,000 on deposit be turned over to the Farmers Bank and at the same time certain promissory notes owned by the Farmers Bank, but which had been charged off as uncollectible, be turned over to plaintiff for collection for the benefit of the seven parties to this action who had turned in the $100,000 in cash to the bank; that the only purpose plaintiff and defendants had in borrowing the money on their joint notes and turning it over to the bank was to save the bank from being closed and liquidated by the banking department and that neither plaintiff nor any of the defendants received any direct benefit from said transaction other than by reason of their interest in the bank as above stated.

If the finding be construed, as respondent assumes, that the parties did not enter into a joint undertaking for the purpose of executing their notes then it is entirely without support in the evidence, since every one of the parties to this action who was asked whether any agreement was made as to the respective liabilities of the parties for the $100,000 borrowed stated that no intention regarding it was ever expressed and under such circumstances the comakers are presumed to be liable in equal amounts as will be seen later.

Furthermore, the finding negativing the truth of paragraph I of the amended complaint is in the form of a

negative pregnant. It therefore cannot be construed as a finding that in executing the notes to the two other banks plaintiff and defendants were not entering into a joint undertaking. (*Auerbach* v. *Healy*, 174 Cal. 60, 64, 65 [161 Pac. 1157]; *Tormey* v. *Anderson-Cottonwood Irr. Dist.*, 53 Cal. App. 559, 562 [200 Pac. 814]; *Wiles* v. *Hammer*, 66 Cal. App. 538, 540 [226 Pac. 651].)

■ We find difficulty also in giving our approval to respondent's contention that the act of plaintiff and defendants in borrowing and turning in this $100,000 was in lieu of having an assessment levied on their stock. The bank had an issued capital stock of 500 shares and the ownership of the parties to this action in these shares was as follows: Plaintiff J. A. Harris, 34; defendants J. H. Holland, 5; L. J. Thomas, 10; W. D. Smith, 10; Frank Wilkin, 350; J. C. Chalupnik, 5, and A. E. Wright, 5. The remaining eighty-one shares were held by others. Defendant, Holland, therefore, owned one one-hundredth of the total issued stock. Presuming the $100,000 to be the total amount necessary to be raised by the assessment, the share due on his stock was only $1,000. Had it been his intention merely to meet this assessment, it is highly improbable that he would have signed joint and several promissory notes obligating himself for the entire $100,000. The same is true as to each of the other signers, two of whom likewise only owned five shares. The improbability that it was their intention to turn this money in in lieu of an assessment is made all the more apparent by the fact that the holders of eighty-one shares, or over sixteen per cent of the total issued stock, were not on any of these notes. Had the borrowing of the money and turning it over to the bank been in lieu of a stock assessment, it is not probable that the holders of these eighty-one shares would have been omitted from the transaction. Under the facts as they occurred a much more reasonable construction would be that plaintiff and the six defendants as the directors and officers of the bank were exercising every effort to keep its doors open, and were willing to extend their joint and several credit for that purpose.

■ The law is clear that, as among themselves, co-makers of a promissory note are presumed in the absence of any evidence to the contrary, to be liable in equal

amounts. (*Bunker* v. *Osborn*, 132 Cal. 480, 482 [64 Pac. 853]; *Booth* v. *Friedman*, 82 Cal. App. 174, 178, 179 [255 Pac. 222].) The mere fact that the co-makers are stockholders and that the money is for the use of the corporation does not of itself rebut this presumption. (*Holm* v. *Burnell*, 50 Cal. App. 222 [194 Pac. 770].) Respondent contends that *Gardner* v. *Holcomb*, 82 Cal. App. 342 [225 Pac. 523], is decisive of the questions here. But all that case holds is that where three persons sign a note for the purpose of raising funds for a corporation and two of them are both stockholders and directors of that corporation and the third has no interest in it, if either of the first two are compelled to pay the note, they have no right to contribution from the third. In *Chipman* v. *Morrill*, 20 Cal. 130, also relied upon by respondent, three parties signed a note and mortgage as part of the purchase price of land which they were buying. Their respective interests in the land were one-half, one-fourth and one-fourth. Plaintiff, who owned the one-half interest, was compelled, through the sale of his property on execution to satisfy a deficiency judgment, to liquidate the entire indebtedness. The court merely held that each of the one-quarter owners was liable to him for that proportion of what he had paid. We do not regard either of these cases as applicable to the facts in the case at bar.

Respondent urges that the evidence shows he paid a much greater sum on the joint notes than appellant concedes in his brief. But even if this be granted, he still has paid less than appellant.

Both the findings and the evidence are silent on the intention of plaintiff and defendants as to what their respective liabilities should be as among themselves for this borrowed money. The law then presumes the co-makers to be liable in equal amounts. It follows that the conclusions of law drawn by the court below to the effect that as between themselves plaintiff and defendants were obligated on their joint notes in proportion to their stock holdings is erroneous.

The judgment is therefore reversed.

Marks, J., and Ames, J., *pro tem.*, concurred.